**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

COREY THAXTON,

        Plaintiff,

v.                                    CIVIL ACTION NO.   2:24-cv-00305

STATE AUTO PROPERTY & CASUALTY
INSURANCE COMPANY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant's *Motion to Dismiss* (Document 7), the *Memorandum in Support* (Document 8), the *Plaintiff's Response to Defendant State Auto Property & Casualty Insurance Company's Motion to Dismiss* (Document 9), and the Defendant's *Reply in Support of Motion to Dismiss* (Document 10), as well as the Plaintiff's *Complaint* (Document 1-1). For the reasons stated herein, the Court finds the motion to dismiss should be denied.

**FACTUAL ALLEGATIONS**

The Plaintiff, Corey Thaxton, owned a home and property in Sissonville, West Virginia. Mr. Thaxton's residence was insured under a policy purchased from the Defendant, State Auto. The policy provided the following coverage: Dwelling, with limits of $262,000, Other Structures, with limits of $26,200, Personal Property, with limits of $131,000, and Loss of Use, with limits of $78,600. Mr. Thaxton consistently paid premiums, which were determined based on the coverage amounts.

A fire on October 20, 2022, destroyed the home, a storage shed, and all of the contents of the home and shed. Mr. Thaxton submitted a claim to State Auto, which confirmed that his home was a total loss. State Auto paid the $262,000 dwelling coverage by satisfying the outstanding mortgage and providing Mr. Thaxton with a check for the remaining coverage amount. State Auto also covered the cost of a hotel room, where Mr. Thaxton stayed for more than two months despite informing State Auto that it was not suitable housing because he had partial custody of his children and because of the distance from his residence, where his animals continued to require care. On January 1, 2023, Mr. Thaxton moved into a condo identified by State Auto, and State Auto paid the rental costs, although it deducted the deposit from Mr. Thaxton's personal property coverage based on the assumption that he would be able to get the deposit back when he moved. The condo was unfurnished, and Mr. Thaxton incurred costs of about $10,000 to purchase furniture after discovering bedbugs on a mattress in the furniture State Auto sought to supply. The condo was located a significant distance from Mr. Thaxton's residence and his children's school and activities, requiring him to drive long distances. In March 2023, Mr. Thaxton received an eviction notice because State Auto failed to timely pay the rent. Although State Auto ultimately rectified the issue, Mr. Thaxton was embarrassed and distressed.

State Auto required Mr. Thaxton to complete personal property inventory forms to receive reimbursement for his belongings. It did not provide him with assistance with the forms, although he informed the company that he was having difficulty completing them. State Auto paid an advance of $2,500 towards Mr. Thaxton's personal property on November 21, 2022. It valued the property listed in a partial inventory completed by Mr. Thaxton at $49,246.86, and, after adding taxes and applying a 50% reduction for depreciation, provided him with a check for $22,016.78

on January 17, 2023. The valuation omitted 73 items from Mr. Thaxton's inventory, for which State Auto provided no payment. State Auto has provided no additional payments for personal property, although the fire destroyed all of Mr. Thaxton's belongings. Mr. Thaxton later informed State Auto that his tractor and trailer had incurred heat damage during the fire, but State Auto did not investigate the claim or provide additional payment.

The Plaintiff asserts the following claims: Count 1 – Breach of Contract; Count 2 – Common Law Bad Faith; Count 3 – Unfair Trade Practices; and Count 4 – Punitive Damages. He seeks compensatory damages, punitive damages, attorney's fees, and expenses.

The Defendant submitted records of proceedings in the Offices of the Insurance Commissioner. Mr. Thaxton filed a consumer complaint, without counsel, alleging "claim delay," wherein he asserted that State Auto had failed to provide policy information, low balled him with offers, and provided inadequate replacement housing. The complaint was filed on February 3, 2023. A hearing examiner held a hearing on October 16, 2023, and issued a recommended decision rejecting the Plaintiff's complaints on January 29, 2024, which was adopted by the Insurance Commissioner on that date.

## STANDARD OF REVIEW

*A. Rule 12(b)(6)*

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2).   Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."   *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.   *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff

4

to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).  A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).  "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,* 556 U.S. at 679.

### B.  Rule 56

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).  A "material fact" is a fact that could affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.  When determining whether summary judgment is appropriate, a court must

view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

### C. Applicable Standard

The Plaintiff argues that consideration of the documents from the proceeding before the Offices of the Insurance Commissioner would require converting the motion to dismiss to a motion for summary judgment. His counsel has submitted a *Rule 56(f) Affidavit of Counsel* (Document

9-1), asserting that discovery is necessary to fully respond to the Defendant's arguments.  He

argues that "State Auto is seeking to recreate the same procedural advantage it enjoyed in the

proceedings before the Insurance Commissioner by having the Plaintiff's claims dismissed without

giving the Plaintiff any real opportunity to conduct discovery with respect to the contents of State

Auto's claim file or the knowledge of its claims adjusters."  (Pl.'s Resp. at 17.)  The Defendant

contends that consideration of the public records generated during the administrative proceeding

is appropriate in a motion to dismiss based on res judicata and collateral estoppel.

Because the Court finds that the Defendant is not entitled to either dismissal or summary

judgment on the grounds of res judicata or collateral estoppel, it is not necessary to determine

which standard applies.  The Court finds that, under the circumstances, the Plaintiff is not

prejudiced by the Court's consideration of the documents submitted by the Defendant, and it is

unnecessary to defer ruling to permit the Plaintiff to conduct relevant discovery.

## DISCUSSION

The Defendant argues that the Plaintiff's claims should be dismissed under the doctrines

of res judicata and collateral estoppel, because he filed a consumer complaint with the West

Virginia Offices of the Insurance Commissioner related to the same issues with State Auto's

handling of his claims following the fire.  The Defendant contends that the Plaintiff's Count III

claim for violation of the Unfair Trade Practices Act is barred by res judicata, because it is "the

same claim, between the same parties, that was litigated before the Offices of the Insurance

Commissioner."  (Def.'s Mem. at 6.)  It further argues that Counts I and II, for breach of contract

and common law bad faith, are barred by collateral estoppel because "the issues at the root of

Plaintiff's Unfair Trade Practices Act claim and his breach of contract and common law bad faith

7

claims are the same" and the "Insurance Commissioner resolved the central issue in Plaintiff's

breach of contract and common law bad faith claims."  (*Id.* at 7.)

The Plaintiff argues that "the Hearing Examiner's findings were made in the context of a

consumer complaint before an administrative agency applying different procedural rules and

standards" and the "Plaintiff had no opportunity to conduct the type of discovery necessary to

properly support such claims."  (Pl.'s Resp. at 6.)  The Plaintiff notes that formal rules of

pleading and evidence do not apply to proceedings before the Offices of the Insurance

Commissioner, and there was no formal discovery process in this case to permit Mr. Thaxton to

review and contest State Auto's claim file.  In addition, the Plaintiff contends that the matters at

issue are not identical, as the Plaintiff's Complaint raises issues and alleges statutory violations

that were not presented in the administrative proceeding, as well as seeking damages not available

from the administrative proceeding.

Res judicata is intended to bar a re-litigation of "causes of action which have been fully

and fairly decided."  *Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41, 48 (W. Va. 1997)

(quoting *Sattler v. Bailey*, 400 S.E.2d 220, 225 (W. Va. 1990)).  Under West Virginia precedent,

three elements must be satisfied to bar litigation on the basis of *res judicata*:

> First, there must have been a final adjudication on the merits in the
> prior action by a court having jurisdiction of the proceedings.
> Second, the two actions must involve either the same parties or
> persons in privity with those same parties. Third, the cause of action
> identified for resolution in the subsequent proceeding either must be
> identical to the cause of action determined in the prior action or must
> be such that it could have been resolved, had it been presented, in
> the prior action.

Syl. Pt. 4, *Blake*, 498 S.E.2d at 44.   The two suits may only be considered identical if the evidence

necessary to support both actions is the same.  *Id*. at 48.  "With respect to the third and final

element…it is imperative that the party bringing the subsequent lawsuit was, during the prior action, able to foresee the consequences of his/her failure to raise the subsequently raised issue in the prior action." *Id.* at 49.

Collateral estoppel is "closely related" to res judicata. *State v. Miller*, 459 S.E.2d 114, 120 (W. Va. 1995). "[C]ollateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgement to which such determination was essential to the judgment." *Id.* Four conditions are required to bar a claim based on collateral estoppel:

> 1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *Ruble v. Rust-Oleum Corp.*, 902 S.E.2d 873, 874 (W. Va. 2024). However, collateral estoppel does not apply if the "quality or extensiveness of procedures followed in the two courts" differs or if "the second action involves application of a different legal standard or substantially different procedural rules." *Id.* at Syl. Pt. 2 – 3. "Where the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims, a compelling reason exists not to apply collateral estoppel." *Id.* at Syl. Pt. 2.

"An administrative decision may have preclusive effect, but 'only if it resulted from a procedure that seems an adequate substitute for judicial procedure.'" *Id.* at 878 (quoting 18B Fed. Prac. & Proc. Juris. § 4475).

> For issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be

9

> rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to the application of administrative *res judicata* or collateral estoppel.

Syl. Pt. 4, *State v. Miller*, 459 S.E.2d 114, 117 (W. Va. 1995).   The West Virginia Supreme Court noted that it "has always been wary" of applying collateral estoppel to administrative determinations.   *State ex rel. McGraw v. Johnson & Johnson*, 704 S.E.2d 677, 688 (W. Va. 2010).

Mr. Thaxton submitted his consumer complaint to the West Virginia Offices of the Insurance Commissioner using an online form on February 3, 2023, less than four months after the loss of his home in a fire.   The complaint was submitted about two weeks after he received a check for items on his partial personal property list, while he was still living in temporary housing secured by State Auto.   He identified "Claim Delay" as the reason for the complaint, and provided the following details of his complaint:

> I have asked for any and all documents, reports and notes in my file and policy with no results, they have been low balling me offers, they are slow to respond.   The housing company is horrible to deal with, I've lived in a hotel for 2 months, I have kids and the hotel had one bed.   I've asked for a complete detailed document of where and who received my policy money and for what reason.

(Thaxton OIC Complaint) (Document 8-1.)   The documents include ongoing messages as additional problems arose, such as the eviction notice Mr. Thaxton received due to State Auto's failure to pay the rent on his condo.   Mr. Thaxton was sent a Notice of Administrative Hearing, detailing the procedures applicable to the hearing, including the right to request subpoenas for documents or witnesses, with costs to be borne by the individual requesting such subpoenas.

The *Recommended Decision of the Hearing Examiner* (Document 8-4) was issued on January 29, 2024, and adopted by the Insurance Commissioner on the same day.   The

recommended decision addresses a variety of complaints regarding State Auto's resolution of Mr. Thaxton's claim, some of which overlap with the matters alleged in the Complaint.   The recommended decision explicitly finds that Mr. Thaxton did not demonstrate that State Auto violated the West Virginia Unfair Trade Practices Act, although it recognizes that "the Complainant did not cite any statutory or rule violation."   (Rec. Dec. at 17.)   The recommended decision also found that Mr. Thaxton had failed to prove that State Auto "failed to follow the applicable insurance policy when making an offer…concerning his dwelling, shed, personal property and his Lodging/ALE [alternative living expense]."   (*Id.* at 18.)

The West Virginia Supreme Court has been hesitant to give preclusive effect to administrative decisions rendered in less formal settings in which individuals often bring complaints without counsel.   The court recently rejected dismissal of claims asserted to be precluded based on previous administrative adjudication of workers' compensation claims, explaining that "[e]mployees injured in the course of their job are supposed to be able to pursue workers' compensation benefits quickly, recover enough to pay their medical bills, and gain wage replacement sufficient to keep bread on the table and the wolves away from the door."   *Ruble v. Rust-Oleum Corp.*, 902 S.E.2d 873, 880 (W. Va. 2024).   The court expressed concern that employees would be deterred from engaging in the workers' compensation process if doing so could preclude future litigation.   *Id*.   The court expressed similar concerns decades earlier, finding that a discrimination claim presented to the West Virginia Education and State Employees Grievance Board did not preclude a civil action under the West Virginia Human Rights Act.   *Vest v. Bd. of Educ. of Cnty. of Nicholas*, 455 S.E.2d 781, 782 (W. Va. 1995).   The court explained that employees bringing grievances "may have legitimate reasons for not raising the more difficult

and far more contentious issue of discriminatory motive," particularly as they often proceed

without counsel, and reasoned that its decision not to impose a collateral bar would "reinforce the

Legislature's purpose…of creating a simple and expeditious procedure for resolving employees'

grievances." *Id.* at 786.

Like both the workers' compensation process and the Grievance Board process, the

consumer complaint process before the Offices of the Insurance Commissioner is designed to

provide faster resolution with fewer procedural hurdles than litigation in the courts. While some

discovery is available, the rules of discovery and evidence do not apply. W. Va. Code Ann. § 33-

2-13 (outlining procedures for hearings before the Insurance Commissioner and stating "formal

rules of pleading or evidence need not be observed at any hearing"). "[W]here a plaintiff bringing

a subsequent lawsuit was not able to discover or otherwise ascertain his/her claim until after the

final adjudication of the prior action, his/her subsequent suit may not automatically be precluded

on the basis of *res judicata*." *Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41, 49 (W.

Va. 1997). The procedures applicable to Mr. Thaxton's consumer complaint were not sufficiently

similar to those available in court to apply preclusive effect, under either the res judicata or the

collateral estoppel standard. Furthermore, as the West Virginia Supreme Court found with

respect to the workers' compensation and Grievance Board cases, barring future actions based on

consumer complaints filed with the Offices of the Insurance Commissioner would chill consumers'

use of the complaint process and hamper the Insurance Commissioner's attendant regulatory

responsibilities.

In addition, the issues and claims in the administrative proceeding are not identical to those

alleged herein. "[I]t is *imperative* that the party bringing the subsequent lawsuit was, during the

prior action, able to foresee the consequences of his/her failure to raise the subsequently raised issue in the prior action." *Id.* (emphasis added). While his claim was still in process with State Auto, Mr. Thaxton, without the benefit of counsel, filed a three-sentence consumer complaint, identifying delay as the basis of his complaint. There is no indication that insurance customers are informed that filing such a complaint may deprive them of the ability to seek legal remedies in the future or that their consumer complaints must contain every possible legal and factual claim. As the hearing examiner recognized, Mr. Thaxton did not identify any legal violation for which he was seeking relief through the consumer complaint process. No consumer could foresee the need to litigate every potential legal cause of action when submitting an informal, online consumer complaint about ongoing difficulty recovering under an insurance policy. While both the consumer complaint and the present action arise from the same insurance policy and loss, they do not involve identical factual or legal claims. Given the lack of identity between the actions, the procedural differences in the two forums, and the distinct purposes of consumer complaints and litigation, the Court finds that res judicata and collateral estoppel do not apply to prevent Mr. Thaxton from bringing these claims based on his prior consumer complaint before the Offices of the Insurance Commissioner. Therefore, the motion to dismiss should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's *Motion to Dismiss* (Document 7) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     October 9, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA